99 Cal.Rptr.2d 441 (2000)
83 Cal.App.4th 186
The PEOPLE, Plaintiff and Respondent,
v.
Phillip Cameron MARSHALL, Defendant and Appellant.
No. B137038.
Court of Appeal, Second District, Division Five.
August 21, 2000.
As Modified September 1, 2000.
Review Granted November 29, 2000.
*442 Richard A. Levy, under appointment by the Court of Appeal, Torrance, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Senior Assistant Attorney General, Marc J. Nolan and Richard B. Cullather, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
TURNER, P.J.

I. INTRODUCTION
Defendant, Phillip Cameron Marshall, appeals from his conviction for first degree murder. (Pen.Code,[1] § 187, subd. (a).) He was also found to have personally used and intentionally discharged a firearm in the commission of the murder. (§§ 12022.5, subd. (a)(1), 12022.53, subds. (b), (c) & (d).) Defendant argues the trial court committed instructional error and abused its discretion in admitting a photograph of the victim into evidence. In the published portion of the opinion, we discuss the effect of the June 26, 2000, decision of the United States Supreme Court in Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 on the trial court's failure to correctly instruct the jury on the elements of a section 12022.53, subdivision (d) firearm use enhancement. We affirm the judgment.

*443 II. FACTUAL BACKGROUND
We view the evidence in a light most favorable to the judgment. (Jackson v. Virginia (1979) 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; Taylor v. Stainer (9th Cir.1994) 31 F.3d 907, 908-909; People v. Osband (1996) 13 Cal.4th 622, 690, 55 Cal.Rptr.2d 26, 919 P.2d 640.) At approximately 4 p.m. on December 3, 1998, Miguel Martinez saw defendant approach Joseph Garcia, the decedent, on a bicycle. Mr. Martinez was a passenger in a passing truck. Defendant walked toward the decedent. Defendant blocked the decedent's pathway. Defendant removed a gun from his jacket and placed it behind his back. The decedent appeared to be afraid of defendant. Mr. Martinez heard a gunshot shortly thereafter. Mr. Martinez then saw defendant fire several additional shots while standing over the decedent. The decedent was lying on the ground at the time defendant was shooting at him. Jose De La Torre also heard gunshots. He looked up and saw defendant shoot the decedent. The decedent fell to the ground. Defendant stepped back a few feet. Thereafter, according to Mr. De La Torre, defendant walked back and fired several additional shots into the decedent.
After she was informed there had been a shooting nearby, Michelle Ayala telephoned the police. While on the phone with the police she walked outside of her place of employment. She saw defendant walk in front of the company where she worked. Roy Woodward also heard gunshots. He went outside where he saw defendant running with a gun raised in the air. Defendant appeared to be loading the gun.
Downey Police Officer Wayne Raymond drove to the scene of the shooting. Officer Raymond found the decedent in a pool of blood next to a bicycle. Several bystanders directed Officer Raymond and other officers to a nearby construction site. Defendant was found hiding in a large dumpster. Officer Sam Gatfield found a gun and a machete secreted in an electrical vault in the area between the shooting site and the dumpster. The decedent's death was determined to have been caused by multiple gunshot wounds. The six expended cartridges found at the scene of the shooting were determined to have been fired from the firearm found in the electrical vault.

III. DISCUSSION

A. Instructions
Defendant argues that the trial court improperly failed to instruct the jury sua sponte with various instructions.
1. Unanimity[**]
2 [**]
Defendant argues that the trial court failed to properly instruct the jury as to "any" of the elements of a section 12022.53, subdivision (d) firearm use enhancement. Citing Apprendi v. New Jersey, supra, 530 U.S. 466, 120 S.Ct. 2348, defendant argues the failure to properly instruct as to all of the elements of a section 12022.53, subdivision (d) enhancement is a violation of the Due Process Clause of the Fourteenth Amendment and constitutes structural error. (Johnson v. United States (1997) 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718; California v. Roy (1996) 519 U.S. 2, 5, 117 S.Ct. 337, 136 L.Ed.2d 266.) He argues that the failure to properly instruct is therefore reversible per se without regard to any question of prejudice.
The pertinent provisions of section 12022.53 are as follows: "(a) This section applies to the following felonies: [¶] (1) Section 187 (murder). [¶] ... [¶] (d) Notwithstanding any other provision of law, any person who is convicted of a felony specified in subdivision (a) ..., and who in *444 the commission of that felony intentionally and personally discharged a firearm and proximately caused great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice, shall be punished by a term of imprisonment of 25 years to life in the state prison, which shall be imposed in addition and consecutive to the punishment prescribed for that felony."
The jurors were instructed as follows concerning firearm use: "It is alleged in count 1 that the defendant Phillip Marshall personally used a firearm during the commission of a handgun [sic] in commission of the crimes charged. If you find the defendant Philip Marshall guilty of the crime charged, or a lesser and included felony offense, you must determine whether the defendant Phillip Marshall personally used a firearm in the commission of those felonies. [¶] The word `firearm' includes a handgun. [¶] The term `personally used a firearm,' as used in this instruction, means that the defendant must have intentionally displayed a firearm in a menacing manner, intentionally fired it or intentionally struck or hit a human being with it. [¶] The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true. You will include a special finding on that question in your verdict form using a verdictusing a form that will be supplied for that purpose." [2] The jury returned the following findings concerning the section 12022.53, subdivision (d) allegations, "We the Jury further find that in the commission and attempted commission of the above offense, the said Defendant PHILIP CAMERON MARSHALL personally and intentionally discharged a firearm, a handgun, which proximately caused great bodily injury and death to JOSEPH GARCIA, within the meaning of Penal [C]ode Section 12022.53(d) to be TRUE."
In People v. Wims (1995) 10 Cal.4th 293, 303, 41 Cal.Rptr.2d 241, 895 P.2d 77, the California Supreme Court held: "[A] defendant is entitled to proper jury instructions regarding the meaning of a weapon use enhancement allegation which is tried to a jury. (People v. Najera (1972) 8 Cal.3d 504, 510, 105 Cal.Rptr. 345, 503 P.2d 1353[] (regarding § 12022.5; approved in part and disapproved in part People v. Wiley (1995) 9 Cal.4th 580, 588, 38 Cal.Rptr.2d 347, 889 P.2d 541[ ].)" In Wims, the Supreme Court concluded that the failure to properly instruct on a weapon use enhancement allegation did not violate the right to trial by jury under the Sixth Amendment as incorporated by the Fourteenth Amendment. (Ibid.) Citing McMillan v. Pennsylvania (1986) 477 U.S. *445 79, 89-90, 106 S.Ct. 2411, 91 L.Ed.2d 67, the California Supreme Court in Wims concluded: "The [United States] Supreme Court, moreover, has specifically determined the Sixth Amendment does not require jury fact-finding when a statute like section 12022(b)makes weapon possession a sentencing factor rather than an element of a crime. [Citation.]" (People v. Wims, supra, 10 Cal.4th at p. 305, 41 Cal.Rptr.2d 241, 895 P.2d 77.) As a result, because no federal constitutional right was implicated, the failure to instruct on an element of a firearm enhancement was subject to the harmless error test articulated in People v. Watson (1956) 46 Cal.2d 818, 836, 299 P.2d 243. The Supreme Court in Wims concluded, "Thus, the trial court's failure to instruct on the elements of a section 12022(b) sentence enhancement is `misdirection of the jury' for which we are constitutionally forbidden to reverse absent a `miscarriage of justice.' (Cal. Const, art. VI, § 13.)" (People v. Wims, supra, 10 Cal.4th at p. 315, 41 Cal.Rptr.2d 241, 895 P.2d 77.) In the respondent's brief, the Attorney General relied solely on Wims for the proposition that no reversal may occur because of instructional error in connection with the section 12022.53, subdivision (d) enhancement unless there has been a miscarriage of justice under the standard of People v. Watson, supra, 46 Cal.2d at page 836, 299 P.2d 243.
After the May 12, 2000, filing of the respondent's brief, on June 26, 2000, the United States Supreme Court issued its opinion in Apprendi v. New Jersey, supra, 530 U.S. 466 at pages 478-490, 120 S.Ct. at pages 2357-2363. The parties have now briefed the effect of the Apprendi opinion on our case. In Apprendi, the United States Supreme Court invalidated a portion of a New Jersey statute which allowed a judge to making findings concerning the purpose of an offense utilizing a preponderance of the evidence standard. If the trial judge found that the offense was committed "`... with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity[,]'" the maximum prison sentence for such an offense was increased from "`between 10 to 20 years.'" (Apprendi v. New Jersey, supra, 530 U.S. at p. 469, 120 S.Ct. at p. 2351.) The United States Supreme Court described the issue before it in Apprendi as follows, "The question presented is whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." (Apprendi v. New Jersey, supra, 530 U.S. at p. 469, 120 S.Ct. at p. 2351].) The Supreme Court noted: "The question whether Apprendi had a constitutional right to have a jury find such bias on the basis of proof beyond a reasonable doubt is starkly presented. [¶] Our answer to that question was foreshadowed by our opinion in Jones v. United States, 526 U.S. 227 [119 S.Ct. 1215, 143 L.Ed.2d 311] (1999), construing a federal statute. We there noted that `under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Id., at 243, n. 6 [119 S.Ct. 1215]. The Fourteenth Amendment commands the same answer in this case involving a state statute." (Apprendi v. New Jersey, supra, 530 U.S. at p. 475, 120 S.Ct. at p. 2355.) The Apprendi court concluded: "In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in Jones. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth *446 in the concurring opinions in that case: `[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt' [Citation.]" (Apprendi v. New Jersey, supra, 530 U.S. at pp. 489-490, 120 S.Ct. at pp. 2362-2363.)
In Apprendi the United States Supreme Court discussed its prior ruling in McMillan v. Pennsylvania, supra, 477 U.S. at pages 86-88, 106 S.Ct 2411. As noted previously, in Wims, the California Supreme Court relied extensively upon McMillan in concluding that the United States Constitution did not guarantee a jury trial on an issue of the validity of a firearm enhancement allegation. (People v. Wims, supra, 10 Cal.4th at pp. 304-309, 41 Cal.Rptr.2d 241, 895 P.2d 77.) In Apprendi, the United States Supreme Court limited its prior holding in McMillan as follows, "We do not overrule McMillan. We limit its holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict a limitation identified in the McMillan opinion itself." (Apprendi v. New Jersey, supra, 530 U.S. at p. 487, fn. 13, 120 S.Ct at p. 2361.)
Quite obviously, that portion of the Wims decision which held that the federal Constitution does not guarantee the right to trial by jury under the Sixth Amendment of a firearm allegation which can result in the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict has now been abrogated by Apprendi In the present case, defendant's conviction of first-degree murder has resulted in a sentence of 25 years to life. (§ 190, subd. (a).) The finding pursuant to section 12022.53, subdivision (d) increases that sentence by adding consecutively an additional 25 years to life in state prison. Therefore, defendant was entitled to have a jury determine whether beyond a reasonable doubt his conduct fell within the provisions of section 12022.53, subdivision (d).
The jury trial right under the Sixth Amendment includes the obligation of a trial court to correctly instruct the jury as to each of the elements of the charged offense. In People v. Flood (1998) 18 Cal.4th 470, 491, 76 Cal.Rptr.2d 180, 957 P.2d 869, the California Supreme Court held: "[T]he United States Supreme Court has held that jury instructions relieving the prosecution of the burden of proving beyond a reasonable doubt each element of the charged offense violate the defendant's due process rights under the federal Constitution. (Sullivan v. Louisiana (1993) 508 U.S. 275, 277-278 [113 S.Ct. 2078, 124 L.Ed.2d 182]; Carella v. California (1989) 491 U.S. 263, 265 [109 S.Ct. 2419, 105 L.Ed.2d 218] (per curiam); People v. Kobrin (1995) 11 Cal.4th 416, 422-423 & fn. 4 [45 Cal.Rptr.2d 895, 903 P.2d 1027] [collecting cases].) Such erroneous instructions also implicate Sixth Amendment principles preserving the exclusive domain of the trier of fact. (Carella v. California, supra, 491 U.S. at p. 265, 109 S.Ct. 2419; People v. Kobrin, supra, 11 Cal.4th at p. 423 [45 Cal.Rptr.2d 895, 903 P.2d 1027].)" In People v. Avila (1995) 35 Cal.App.4th 642, 651-652, 43 Cal.Rptr.2d 853, we synthesized the federal constitutional authority on the right to instruction as to the elements of an offense as follows: "It is well established that the Sixth Amendment guarantees a criminal defendant the right to require the prosecution to prove [...] guilt [...] beyond a reasonable doubt. (Victor v. Nebraska (1994) 511 U.S. [1, 5] [114 S.Ct. 1239, 127 L.Ed.2d 583].) In Sullivan v. Louisiana (1993) 508 U.S. [275, 277] [113 S.Ct. 2078, 124 L.Ed.2d 182], the United States Supreme Court held: `What the factfinder must determine to return a verdict of guilty is prescribed by the Due Process Clause. The prosecution bears the burden of proving all elements of the offense charged, *447 [citations], and must persuade the factfinder "beyond a reasonable doubt" of the facts necessary to establish each of those elements....' The United States Supreme Court has extended this right to constitutionally require that no jury instructions relieve the prosecution of the responsibility of proving each element beyond a reasonable doubt. In Carella v. California (1989) 491 U.S. 263, 265 [109 S.Ct. 2419, 105 L.Ed.2d 218], the court held: `Jury instructions relieving States of this burden [of proving each element of an offense beyond a reasonable doubt] violate a defendant's due process rights. [Citations.] Such directions subvert the presumption of innocence accorded to accused persons and also invade the truth-finding task assigned solely to juries in criminal cases.'" Applied to the present context, a necessary corollary of the Apprendi decision is that a trial judge must instruct on all the elements of a firearm use enhancement. When a trial judge neglects to do so, this relieves the prosecution of the burden of proving each element of the charge beyond a reasonable doubt. Under these circumstances, such an erroneous instruction violates the Fourteenth Amendment Due Process Clause.
In the present case, the jurors were instructed on certain elements of a section 12022.53, subdivision (d) enhancement. The jurors were instructed on the elements of intentional and personal use of the firearm. Further, the jurors were instructed that the prosecution had the responsibility of proving the truth of the section 12022.53, subdivision (d) enhancement beyond a reasonable doubt. However, the jurors were not instructed that the intentional and personal discharge of a firearm must proximately cause death; nor were any instructions defining proximate cause read to the jury. Also, the jurors were not instructed that the victim must be a person other than an accomplice. The omission of these elements of a section 12022.53, subdivision (d) firearm use enhancement violated the Fourteenth Amendment Due Process Clause.
The sole remaining question is whether the judgment must be reversed as a result of the foregoing instructional error. Defendant argues that an enhancement instruction which omits an element is reversible error per se. We disagree. Rather, we conclude that the correct standard of reversible error is that set forth in Chapman v. California (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705. In cases involving the failure to instruct on an element of an offense, it is now well-established that the Chapman standard of reversible error applies to the appellate court's determination to affirm or reverse. (Neder v. United States (1999) 527 U.S. 1, 8-9, 119 S.Ct. 1827, 144 L.Ed.2d 35; People v. Sakarias (2000) 22 Cal.4th 596, 624-625, 94 Cal.Rptr.2d 17, 995 P.2d 152; People v. Flood supra, 18 Cal.4th at pp. 492-507, 76 Cal.Rptr.2d 180, 957 P.2d 869; People v. Ramsey (2000) 79 Cal.App.4th 621, 630-631, 94 Cal.Rptr.2d 301; see California v. Roy (1996) 519 U.S. 2, 5, 117 S.Ct. 337, 136 L.Ed.2d 266.) Nothing in Apprendi suggests that enhancements are to be treated any differently than the elements of an offense. In fact, the core holding of Apprendi is that for due process purposes, sentencing enhancements, except those involving prior convictions, are to be treated the same as offenses. Accordingly, under the compulsion of Apprendi we hold that the Chapman standard of reversible error applies to the failure to instruct on an element of a nonsentencing enhancement.
In the present case, the failure to instruct that the firearm use must have proximately caused death and the decedent could not be an accomplice was harmless beyond a reasonable doubt. (Chapman v. California, supra, 386 U.S. at p. 24, 87 S.Ct. 824.) There is no dispute that the decedent's death was caused by defendant's intentional use of a firearm. Defendant repetitively shot the decedent who was supine upon the ground. There was *448 no dispute that a legal or proximate cause of the decedent's demise were the bullets repeatedly fired into him. Further, there was no evidence that the decedent was an accomplice of defendant in any crime. Under the circumstances, the instructional error was harmless beyond a reasonable doubt.[3]
3.-III.B.[***]

IV. DISPOSITION
The judgment is affirmed.
ARMSTRONG, J., and GODOY PEREZ, J., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.A.1 and III.A.3-III.B and the indicated heading III.A.2 on page 443.
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[**] See footnote *, ante.
[2] The jury was not instructed pursuant to CALJIC No. 17.19.5 which provides in part: "It is alleged ... that the defendants]__ intentionally and personally discharged a firearm [and [proximately] caused [great bodily injury] [or] [death] to a person] [other than an accomplice] during the commission of the crime[s] charged. [H] If you find the defendants] ___ guilty of [one or more] of the crime[s] thus charged, you must determine whether the defendants] ___ intentionally and personally discharged a firearm [and [proximately] caused [great bodily injury] [or] [death] to a person] [other than an accomplice] in the commission of [that] ... [felony]. ... [¶] The word `firearm' includes.... [any device designed to be used as a weapon from which is expelled through a barrel a projectile by the force of any explosion or other form of combustion.] [¶] The term `intentionally and personally discharged a firearm,' as used in this instruction means that the defendant [himself] ... must have intentionally discharged it. [¶] ... [¶] [The term `great bodily injury' means a significant or substantial physical injury. Minor, trivial or moderate injuries do not constitute great bodily injury.] [¶] [A [proximate] cause of [great bodily injury] [or] [death] is an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the [great bodily injury] [or] [death] and without which the [great bodily injury] [or] [death] would not have occurred.] [¶] The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true. [¶] Include a special finding on that question in your verdict, using a form that will be supplied for that purpose."
[3] Because the Attorney General has failed to raise any contention concerning whether Apprendi may be applied to trials completed prior to its filing date, June 26, 2000, we do not address any such issue.
[***] See footnote *, ante.