[No. A088553. First Dist., Div. Five. Dec. 15, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
DEVON RAY ANDRADE, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, parts I, II, IV, V, VI and VII of this opinion are not certified for publication.

**COUNSEL**

John Doyle, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Richard Rochman and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHMAN, J.**[*]—Devon Ray Andrade appeals his conviction by jury trial of arson of a structure with use of a device designed to accelerate a fire (Pen. Code,[2] §§ 451, subd. (c), 451.1, subd. (a)(5)) (count 1); two counts of second degree burglary (§ 459) (counts 2, 8); two counts of possession of flammable or combustible material (§ 453, subd. (a)) (counts 3, 7); misdemeanor vandalism (§ 594, subd. (a)) (count 4); attempted arson (§ 455) (count 5); arson of property (§ 451, subd. (d)) (count 6); assault with a deadly weapon (§ 245, subd. (a)(1)) (count 9); and making a terrorist threat (§ 422) (count 13). He raises claims of instructional, evidentiary, and sentencing error, and insufficiency of the evidence. He also argues that interruption of the trial for competency proceedings violated his rights to due process, fair trial, and the expeditious disposition of his case.

---

[*] Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[2] All undesignated section references are to the Penal Code.

## BACKGROUND

*Counts 1-4: The Offenses at Impostors*

At approximately 2:30 a.m. on November 29, 1997, defendant smashed the glass front door of and entered Impostors, a jewelry store located on the ground floor of a semi-high-rise building on Geary Street in San Francisco. According to eyewitness Victor Zacca, once inside the store defendant shattered two or three glass display cases, pulled a liquid-filled glass beverage bottle with a cloth protruding from it out of his backpack, and lit the cloth, causing flames to quickly erupt on the floor around him. He then threw the bottle against the display case. According to eyewitness Charles Davis, after defendant threw what appeared to be a liquid-filled juice bottle several times, the bottle broke on the floor, after which defendant walked forward and threw a match causing the entire back wall up the ceiling to erupt in flames. Defendant then left the store. Davis and another person used portable fire extinguishers to put out the fires.

Davis and Zacca selected defendant's photograph from a photo lineup as depicting the person they saw damage and set fire to the Impostors store.

San Francisco Fire Captain Thomas Ryan responded to the scene and noted that there had been several fires in different locations inside Impostors, indicating that the fires did not start naturally or accidentally, but were set. Ryan noted scorching, but not charring, on the rear floor, and testified that the floor had "some evidence of burning." He identified a "little bit of charring" from a photograph of the store floor. Ryan opined that a flammable liquid, i.e., an accelerant, had been used in setting the fires in the Impostors store.

Lieutenant Lawrence Wright of the San Francisco Fire Department's Bureau of Fire Investigation arrived at the fire scene shortly after the other firefighters. Wright noticed actual charring of the hardwood floor. There was also charring of the molding around several nearby display cases, indicative of burning associated with an ignitable or flammable liquid such as gasoline. Wright also smelled gasoline and noted a plastic container obviously involved in the fires. Gasoline was present on the hardwood floor and in the remains of the plastic container. Wright, testifying as an expert on the cause and origin of the fires, opined that the fires were incendiary, i.e., deliberately set and initiated and accelerated with gasoline, explaining that an accelerant is defined as any material, often a liquid, used to either enhance or spread a fire, and that gasoline is a known accelerant. Wright also opined that the first origin of fire was the area adjacent to the charred hardwood floor.

*Counts 5-13: The Offenses at Macy's*

On the afternoon of November 30, 1997, Denise La Lande, Drew Taylor, and Louis Schuman were working as security agents in the men's department of the Macy's store located on Stockton Street in downtown San Francisco. About 3:00 p.m. Taylor and Schuman saw, via a security camera, defendant enter the store carrying a backpack, remove the price tag from a pair of sunglasses, and place them on his head. La Lande recognized defendant as someone she had seen in the Macy's men's department the day before. After placing the sunglasses on his head defendant went to other departments within the store where he was observed in what appeared to be shoplifting activity. At one point La Lande observed defendant inside a fitting room seated next to a balled up silver chain with very large, thick links.

According to Taylor and salesperson Jan Navaro, about 4:00 p.m. defendant approached Navaro's counter, inquired about some cufflinks in the display case, rolled a store gift box into a torch, removed a jar containing clear liquid from his backpack, and splashed some of the liquid on the torch and on the floor. He then lit the torch and threatened to kill Navaro if she came near him. Flames erupted on the floor where the liquid was spilled and on the adjacent display case. Defendant then threw the jar, which broke at the fragrance counter, and used the chain he was seen with in the fitting room to smash a glass display case.

La Lande corroborated Taylor's testimony that defendant threw a bottle containing liquid at the fragrance counter, and that the bottle broke and the liquid spilled on the floor. She said defendant then poured the contents of another bottle onto the smashed display case and ignited the area with the torch, causing the display case to erupt in flames.

Schuman testified that when he tried to grab defendant from behind, he (Schuman) slipped, injuring his knee. Defendant then thrust the lit torch toward Schuman, setting his pants leg and back on fire. Schuman suffered a torn quadriceps tendon but no burns.

Defendant was arrested at the scene. A bottle containing gasoline and matches were found in defendant's pants pockets, and a bottle with liquid and a gas can were found in defendant's backpack. The cardboard torch, several containers, and the chain were recovered from the fire scene. Residue from the bottles and containers found at the scene tested positive for gasoline. Wright opined that the Macy's fire was an incendiary fire accelerated with gasoline.

DISCUSSION

I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III

■ Defendant contends that the court misinstructed the jury on the factual elements of the section 451.1, subdivision (a)(5), enhancement alleged in conjunction with the count 1 charge of arson of the structure at the Impostors store.

Section 451.1 provides in relevant part: "(a) Notwithstanding any other law, any person who is convicted of a felony violation of Section 451 shall be punished by a three-, four-, or five-year enhancement if one or more of the following circumstances is found to be true: [¶] . . . [¶] (5) The defendant committed arson as described in subdivision . . . (c) of Section 451 and the arson was *caused by use of a device designed to accelerate the fire* or delay ignition. [¶] (b) The additional term specified in subdivision (a) shall not be imposed unless the existence of any fact required under this section shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact." (Italics added.)

The court orally instructed the jury as follows: "It is further alleged that at the time of the commission of the crime charged in count 1, that the defendant *used a device to accelerate the fire* or delay ignition. [¶] If you find defendant guilty of the crime charged in count 1, you must determine whether or not the truth of this allegation has been proved. [¶] The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true. [¶] Include a special finding on that question, using a form that will be supplied to you." (Italics added.)[5]

Defendant argues that by omitting the word "designed" the jury did not have to determine whether he used a device that was *designed to* accelerate

---

*See footnote 1, *ante*, page 579.

[5]Defendant had requested the following special instruction which mirrored the language of section 451.1, subdivision (a)(5): "It is alleged in count 1 that the defendant caused the arson charged in count 1 by use of a device designed to accelerate the fire or delay ignition. [¶] If you find the defendant guilty of the crime charged in count 1, you must determine whether the defendant in causing the arson used a device designed to accelerate the fire or delay ignition."

Although the court stated it was modifying its instruction to include "exactly" the same language as defendant's requested instruction, the instruction read and given to the jury omitted the language that defendant argues was necessary for a proper statement of the law.

the fire, and could erroneously find the enhancement true based merely on his igniting of spilled gasoline, which according to him is not a device designed to accelerate a fire.

The thrust of defendant's argument is that as a result of the court's instruction, the jury could have improperly found the enhancement true based on Davis's testimony, i.e., that a gasoline-filled bottle was thrown and broke, after which the spilled gasoline was ignited. According to defendant, Davis's testimony does not establish that defendant used a device designed to accelerate the fire because the bottle served no purpose other than as a container for the gasoline, and gasoline per se is not a device designed to accelerate a fire but is instead a combustible substance designed for the purpose of propelling vehicles. Defendant goes so far as to suggest that the court had a sua sponte duty to apprise the jury that "the mere use of bottles as containers for gasoline" does not constitute use of a device designed to accelerate the fire under section 451.1, subdivision (a)(5).

Defendant acknowledges that a breakable gasoline-filled container with a lightable wick is a Molotov cocktail, which he concedes *is* a "device designed to accelerate the fire" under section 451.1, subdivision (a)(5), and that Zacca's testimony that he used such a device does support a true finding on the enhancement. However, defendant argues that as a result of the erroneous instruction it is possible that the jury improperly found the enhancement true based on Davis's testimony, which does not establish his use of a device designed to accelerate the fire and, therefore, the error is prejudicial.

█ A court is required to instruct the jury on the points of law applicable to the case, and no particular form is required as long as the instructions are complete and correctly state the law. (*People v. Ponce* (1996) 44 Cal.App.4th 1380, 1386 [52 Cal.Rptr.2d 422].) In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys. The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights. In making this determination we consider the specific language under challenge and, if necessary, the instructions as a whole. (*People v. Davison* (1995) 32 Cal.App.4th 206, 212 [38 Cal.Rptr.2d 438], and authorities there distilled.)

█ Because the phrase "device designed to accelerate the fire" (§ 451.1, subd. (a)(5)) is capable of more than one meaning, statutory construction is necessary, and appears to be an issue of first impression.

Section 451.1 was enacted in 1994 as part of urgency legislation creating new arson-related offenses and enhancements and amending various statutes

for the purpose of increasing the penalties for arson. (Stats. 1994, ch. 421, § 2, p. 2299, eff. Sept. 7, 1994, enacting Sen. Bill No. 1309 (1993-1994 Reg. Sess.) (hereafter Senate Bill No. 1309).)[6] Section 7 of Senate Bill No. 1309 provides: "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are: [¶] In order to establish a meaningful deterrent to the increase in the incidence of arson throughout the state and to reduce the devastation created therefrom, it is necessary that this act take effect immediately." In addition to adding the section 451.1 enhancement, Senate Bill No. 1309 added section 451.5 establishing the offense of aggravated arson punishable by a state prison term of 10 years to life, added section 452.1 establishing a sentence enhancement for persons convicted of unlawfully causing a fire (§ 452) if certain factual circumstances are found, and amended sections 451, 454 and 1203.06. (Stats. 1994, ch. 421, §§ 1, 3, 4, 5, 6, p. 2299, eff. Sept. 7, 1994.) Supporters of Senate Bill No. 1309 argued, " 'This bill would increase the penalties for the worst arsonists who exhibit a specific intent to inflict damage or who in fact inflict serious damage or who commit a repeat offense and pose a continuing threat to society.' " (Sen. Floor Analysis of Sen. Bill No. 1309, Aug. 26, 1994, p. 4; quoting Assem. Com., Analysis of Sen. Bill No. 1309 (1993-1994 Reg. Sess.) as introduced Jan. 14, 1994, pp. 5-6 [the express purpose of the bill according to the sponsor].)

Clearly then, the purpose of section 451.1 is to deter arson by increasing the penalties for arsonists who exhibit a specific intent to inflict damage by causing the arson by use of a device designed to accelerate the fire.

■ With the legislative history as a background, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) " 'The court looks first to the language of the statute, attempting to give effect to the usual, ordinary import of that language and seeking to avoid making any language mere surplusage. Significance if possible should be attributed to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. [Citation.] The various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citation.] The provisions must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. [Citations.]' " (*People v. Womack* (1995) 40 Cal.App.4th 926, 930 [47 Cal.Rptr.2d

[6]We grant the People's request that we take judicial notice of an Assembly Public Safety Committee analysis of Senate Bill No. 1309. (Evid. Code, §§ 452, subd. (c), 453, 459.)

76], quoting *Beaty v. Imperial Irrigation Dist.* (1986) 186 Cal.App.3d 897, 902 [231 Cal.Rptr. 128].)

 With no citation to authority, defendant asserts that the phrase "device designed to accelerate the fire" contained within section 451.1, subdivision (a)(5), has a technical meaning peculiar to the law. We disagree, since we have found nothing in section 451.1 or any other authority suggesting that the Legislature intended the phrase to have a technical or special meaning.[7] Thus, we first consider the plain meaning of the language of section 451.1, subdivision (a)(5).

"Device" is defined in relevant part as "1: something devised or contrived: as . . . f: piece of equipment or a mechanism designed to serve a special purpose or perform a special function." (Webster's 9th New Collegiate Dict. (1987) p. 347.)

"Design" is defined in relevant part as "1 a: to conceive and plan out in the mind[;] b: to have as a purpose: intend[;] c: to devise for a specific function or end . . . ." (Webster's 9th New Collegiate Dict., *supra*, p. 343.)

"Accelerate" is defined in relevant part as "1: to bring about at an earlier time[;] 2: to cause to move faster[;] 3 a: to hasten the progress or development of[;] b: increase . . . ." (Webster's 9th New Collegiate Dict., *supra*, p. 48.)

In light of the legislative history regarding Senate Bill No. 1309, we conclude that "device designed to accelerate the fire" (§ 451.1, subd. (a)(5)) means a piece of equipment or a mechanism intended, or devised, to hasten or increase the progress of the fire.

We further conclude that omission from the instruction of the word "designed" relieved the prosecution of the burden of proving beyond a reasonable doubt that the device used to cause the arson must be designed to accelerate the fire. (*People v. Flood* (1998) 18 Cal.4th 470, 481 [76 Cal.Rptr.2d 180, 957 P.2d 869].) Thus, the instruction given could permit a jury to find the enhancement true even though the defendant did not cause an arson by using a device that was specifically intended, i.e., designed, for the purpose of accelerating the fire. Such person might not fall within the "worst" type of arsonist the Legislature was targeting in enacting section

---

[7]We note the existence of other statutes that expressly define "device" or a particular type of device. (See, e.g., § 453 [expressly defining "incendiary device"]; Bus. & Prof. Code, § 12531 ["device" defined for chapter regarding service agencies for weighing and measuring devices]; Health & Saf. Code, § 109920 ["device" defined for purposes of Sherman Food, Drug, and Cosmetic Laws].)

451.1. Since the jury was not otherwise properly instructed on the omitted term, the instruction as given was erroneous.

Although not addressed by the parties, the instruction given also erroneously failed to inform the jury that in order to find the section 451.1 enhancement true they had to find that "the arson was caused by" the defendant's use of a device designed to accelerate a fire. Thus, the instruction given permitted the jury to find that defendant used a device to accelerate the fire without finding that such use caused the arson. For this additional reason, the instruction was erroneous.

We next must determine whether the instructional error was prejudicial, i.e., whether it resulted in the jury improperly finding the section 451.1, subdivision (a)(5) enhancement true.

In his appellate brief defendant acknowledges that in *People v. Wims* (1995) 10 Cal.4th 293, 298, 315 [41 Cal.Rptr.2d 241, 895 P.2d 77], our Supreme Court established that error in instructing on an enhancement is subject to harmless error analysis under the California constitutional standard enunciated in *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. However, in a subsequent letter to the court, he argues that in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435] the United States Supreme Court overruled *Wims* sub silentio, and therefore we must apply the federal standard enunciated in *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065] (*Chapman*) in assessing whether the instructional error on the enhancement was prejudicial. The People have not weighed in on the issue.

Under *Watson*, instructional error requires reversal if the reviewing court, after considering the entire cause, including the facts, instructions, the arguments of counsel, any communications from the jury during deliberations, and the entire verdict, determines that " 'it is reasonably probable that a result more favorable to the [defendant] would have been reached in the absence of the error.' " (*People v. Wims, supra,* 10 Cal.4th at p. 315, quoting *People v. Watson, supra,* 46 Cal.2d at p. 836.) Under *Chapman,* by contrast, instructional error requires reversal unless it appears beyond a reasonable doubt that the error did not contribute to the jury's verdict. (*Chapman, supra,* 386 U.S. at p. 24 [87 S.Ct. at p. 828]; *People v. Flood, supra,* 18 Cal.4th at p. 504.)

The issue of what harmless error standard applies to failure to instruct on an element of an enhancement is currently pending in the Supreme Court. (*People v. Marshall* (2000) 83 Cal.App.4th 186 [99 Cal.Rptr.2d 441], review

granted Nov. 29, 2000, S091666 [briefing deferred pending decision in *People v. Sengpadychith*, S090076].) We need not address the issue here because, as we explain, even under the higher *Chapman* standard the instructional error is harmless.

Defendant appears to argue that the instructional error is prejudicial because we do not know whether or not the jury based its finding on the enhancement on evidence which satisfied the elements of section 451.1, subdivision (a)(5). However, under *Chapman* we may affirm the jury's verdict despite the instructional error "if the jury that rendered the verdict at issue could not rationally have found the omitted element unproven; the error is harmless, that is, if the record contains no substantial evidence supporting a factual theory under which the elements submitted to the jury were proven but the omitted element was not. [Citation.]" (*People v. Sakarias* (2000) 22 Cal.4th 596, 625 [94 Cal.Rptr.2d 17, 995 P.2d 152].)

The issue is whether the jury could have reasonably concluded, based on Davis's testimony, that a gasoline-filled bottle, which after being thrown, broke, and expelled and dispersed gasoline, a fire accelerant, which was then ignited, is a device *designed* to accelerate the fire under section 451.1, subdivision (a)(5). In view of the record, a rational jury could have concluded only that the gasoline-filled bottle was a device designed to accelerate the fire and that the Impostors arson was caused by defendant's use of such device.

The evidence was undisputed that defendant threw the gasoline-filled bottle. Based on that evidence the jury could properly have found that defendant intended the bottle containing the accelerant gasoline to serve as a missile or projectile, whose purpose was to disperse the accelerant at a distance farther away from him and/or over a greater surface area than could be otherwise achieved. Dispersal of a fire accelerant at a greater distance and/or over a greater area would serve to accelerate, i.e., hasten or increase, the fire's spread. No evidence was presented suggesting that the gasoline-filled bottle served any purpose other than as a device intended to accelerate the fire. In addition, the undisputed testimony of Ryan and Wright established that the Impostors fire was deliberately set, i.e., caused by use of an accelerant. No evidence was presented that the fire was caused by anything other than defendant's use of the device that accelerated it, or that the gasoline was expelled from the bottle accidentally. Further, the undisputed testimony that defendant was in possession of and used at least several gasoline-filled bottles to cause the arson at Macy's the day after the Impostors arson underscores the lack of any possible explanation other than that the device consisting of the gasoline-filled bottle was designed to accelerate

the fire, and that defendant caused the arson at Imposters by use of the device.

In addition, the closing arguments of counsel had no bearing on the omitted element. Instead, the arguments focused on whether there was charring of the Impostors structure required for arson, and whether defendant used a *device* to accelerate the fire. The prosecutor argued that gasoline in a bottle constitutes a device to accelerate a fire, while defense counsel argued that starting a fire by using a match to ignite poured gasoline does not constitute a device or acceleration of the fire. In finding the enhancement true, the jury necessarily found that defendant did more than use a match to ignite poured gasoline, that he used a device to accelerate the fire. Based on the record before us, we conclude that no rational juror could find that defendant used a device to accelerate the fire, but fail to find that the device was designed to accelerate the fire and that the Impostors arson was caused by defendant's use of such device. Put another way, there is no doubt that the jury would have reached the same finding on the enhancement had the trial court correctly instructed on the design and causation elements. Thus, there is no rational basis upon which the instructional error could have affected the jury's finding on the section 451.1, subdivision (a)(5), enhancement. Under these circumstances, the instructional error was harmless beyond a reasonable doubt.

### IV-VII*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Jones, P. J., and Stevens, J., concurred.

---

*See footnote 1, *ante*, page 579.