Filed 9/24/14  P. v. Rodriguez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B250759 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA294419) |
| v. | |
| HERIBERTO RODRIGUEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge.  Affirmed.

Brett H. Harding Duxbury, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

This appeal arises from a capital murder case. Appellant Heriberto Rodriguez contends the trial court improperly instructed the jury and erred in imposing victim restitution on dismissed counts. We find no error and affirm.

# FACTS

## *The Crimes*

Reviewed in accord with the usual standard of review (see, e.g., *People v. Brown* (2014) 59 Cal.4th 86, 105-106), the evidence presented at Rodriguez's trial established the following facts.

## *Count 1 (Murder)*

On November 16, 2005, Rodriguez and Christian Perez beat Chadwick Cochran to death in a communal dining area in the Los Angeles County Men's Central Jail. All three were jail inmates at the time. During the course of the 30-minute attack, Rodriguez and Perez repeatedly beat Cochran with food trays, knocked him to the floor, punched and kicked him, and jumped onto him from benches in a manner which an inmate witness described as being like professional wrestling. Rodriguez and Perez also invited other inmates to join in the beating, which a handful did. When Cochran became unconscious a number of times during the attack, Rodriguez and Perez got glasses of water and splashed the water into Cochran's face to bring him back to awareness before continuing their assaults. Cochran died from blunt force trauma.

## *Count 3 (Robbery)*

On July 29, 2004, Rodriguez went to gas station near Sepulveda Boulevard and Chatsworth Street, pulled out a handgun, and pushed it into the rib cage of the cashier, Rene Chavez. Rodriguez told Chavez to hand over all of the money he had, and Chavez complied.

Rodriguez committed a series of crimes on July 31, 2004, at about 1:30 a.m. They are listed below chronologically and with reference to the respective counts.

*Count 11 (**Attempted Carjacking**)*

Rodriguez approached Juan Gomez as he was sitting in his car at a Jack-in-the-Box restaurant in San Fernando. Rodriguez pulled out a gun and put it on Gomez's neck through the open driver's side window, and said, "You're going to take me somewhere." Rodriguez threatened to kill Gomez if he refused. Gomez nevertheless refused. Rodriguez kept trying to unlock the doors of Gomez's car as Gomez kept using a door lock switch to relock them. Rodriguez and Gomez "kept going back and forth" for a period of time, until Rodriguez walked to a truck in front of Gomez's car.

*Counts 5 and 7 (**Kidnapping During a Carjacking and Robbery**)*

Rodriguez next approached John Silva who was sitting in his Chevy S-10 truck. Rodriguez pointed a gun at Silva, then opened the driver's door and pushed his way into the driver's seat, as Silva moved to the passenger seat. Rodriguez then drove the truck away.[1] At some point, Los Angeles County Police Department Officer Timothy Wedemeyer and his partner, driving a black and white police car, began a pursuit of the S-10. Rodriguez drove "fast, recklessly, [and] from side to side . . . ."

*Count 4 (**Kidnapping During a Carjacking**)*

Rodriguez eventually struck Julian Ufano's car near Fox Street and Laurel Canyon Boulevard. Ufano initially began to get out of his car, then noticed a police car with its lights activated, and decided to stay put. As Ufano was settling back in his car, Rodriguez approached, holding an object that looked like a gun. Rodriguez told Ufano to move over. Rodriguez got into the car with Ufano, and began driving away. The police pursued Ufano's car on surface streets and the freeway.

*Count 12 (**Felony Evading a Peace Officer**)*

The officers continued to pursue Rodriguez after he drove Julian Ufano's car away from the area of Fox Street and Laurel Canyon Boulevard. During the pursuit, Rodriguez drove through stop signs and solid red traffic lights, and led police vehicles onto and off and onto and off a local freeway. He drove head on at other vehicles, and at different

---

[1]     The alleged crimes involving victim John Silva included a count 6 charging the crime of kidnapping to commit robbery. The jury found Rodriguez not guilty of count 6.

points during the pursuit, exceeded speeds of 100 miles per hour. He drove eastbound in the westbound lanes of the freeway. A police helicopter joined the pursuit. Eventually, the car broke down in a public parking lot at a shopping center. The pursuit covered upwards of 20 miles over a half-hour period of time. Officers arrested Rodriguez at the scene where the pursuit ended.

*The Criminal Case*

In August 2006, the People filed an information charging Rodriguez with the offenses summarized above.[2] The charges were tried to a jury in spring 2013. The jury convicted Rodriguez of first degree murder (Pen. Code, § 187, subd. (a)),[3] with a special circumstance finding that the murder was intentional and involved the infliction of torture. (§ 190.2, subd. (a)(18).) The jury also convicted Rodriguez of two counts of second degree robbery (§ 211), two counts of kidnapping during a carjacking (§ 209.5, subd. (a)), one count of attempted carjacking (§§ 664; 215, subd. (a)), and one count of evading a peace officer with wanton disregard for safety, a felony (Veh. Code, §§ 2800.1, subd. (a); 2800.2, subd. (a)). In the penalty phase, the jury returned a verdict setting Rodriguez's penalty at life without possibility of parole for the first degree special circumstance murder. The trial court thereafter found that Rodriguez had a prior conviction with a prison term. (§ 667.5, subd. (b).)

In early August 2013, the court sentenced Rodriguez to a term of life without possibility of parole for the first degree special circumstance murder. Further, the court sentenced Rodriguez to two consecutive terms of life for the two counts of kidnapping during a carjacking. The court imposed a consecutive determinate term of seven years six months for the two second degree robberies, the attempted carjacking and the felony

---

**2** Count 2 charged Perez with the murder of Cochran. Rodriguez was tried alone. Perez was not involved at Rodriguez's trial; Perez is not involved in Rodriguez's current appeal. The information included additional counts upon which the jury did not return verdicts. Those counts are relevant to Rodriguez's current appeal only as to a restitution issue which we discuss below.

**3** All further section references are to the Penal Code except as otherwise noted.

evading.  The court ordered Rodriguez to pay victim restitution to multiple victims of his crimes, and set a restitution hearing.  Rodriguez filed a notice of appeal before the amounts of restitution were determined.

## DISCUSSION

**I.     The Special Circumstance Instructional Error Claim**

Rodriguez contends the jury's special circumstance finding must be reversed because the trial court erred by instructing the jury with CALCRIM No. 733 [defining the elements of the murder with torture special circumstance], and not further instructing sua sponte with CALCRIM No. 702 [defining the mental state required for accomplice liability when a special circumstance is charged and there is sufficient evidence to show the defendant may have been an accomplice and not the actual killer].  Rodriguez's argument is that the jury may not have understood it had to find that he harbored an intent to kill to find the special circumstance murder with torture true.  We find no instructional error.

The information charged Rodriguez with the murder of Chadwick Cochran and alleged the murder was committed by means involving the infliction of torture, a special circumstance allegation pursuant to section 190.2, subdivision (a)(2).  The trial court instructed the jury with respect to the substantive offense of murder that a defendant could be liable by committing an offense as the perpetrator, an aider and abettor, or a co-conspirator.  (See CALCRIM Nos. 400, 401 & 416.)  The prosecutor, in turn, argued to the jurors that if they doubted Rodriguez directly perpetrated the murder of Cochran, they could still find Rodriguez was guilty of murder as an aider and abettor, or as a co-conspirator.

With respect to the degree of the murder, the trial court instructed the jury with CALCRIM No. 521 that Rodriguez was being prosecuted for first degree murder under two theories:  (1) that the murder was willful, deliberate and premeditated; or (2) the victim was "murdered by torture."

5

The prosecutor argued to the jurors that they could convict Rodriguez of first degree murder even if they concluded that he did not have the intent to kill Cochran. Specifically, the prosecutor argued: "Murder by torture. [¶] . . . is the other theory of first-degree murder. [¶] So willful, deliberate and premeditated with express malice is one theory. [¶] [Murder by torture] is now a separate theory of first-degree murder. [¶] . . . [¶] There is no intent to kill required here. . . . [¶] The first theory that we have is express malice plus it being willful, deliberate and premeditated. . . . [¶] Express malice is intent to kill. [¶] Th[e] murder by torture theory of first-degree murder no intent to kill is required. [¶] So as long as you believe that the elements of murder by torture have been met . . . [¶] . . . [¶] [n]o intent to kill required."

With respect to the special circumstance allegation attached to the murder count, the trial court instructed the jurors using CALCRIM Nos. 700, 704, 705, 706, and 733. These instructions told the jury: "If you find *the defendant* guilty of first degree murder, you must also decide whether the People have proved that . . . the special circumstance[] [allegation] is true." (CALCRIM No. 700, emphasis added.) Also: "In order to prove the special circumstance[] of [murder involving the infliction of torture], the People must prove not only that *the defendant* did the act[] charged, but also that he acted with a particular intent or mental state. . . ." (CALCRIM No. 705, emphasis added.)

Pursuant to CALCRIM No. 733, the court further instructed the jury as follows:

"*The defendant* is charged with the Special Circumstance of Murder Involving the Infliction of Torture in violation of . . . section 190.2(a)(18). To prove that this special circumstance is true, the People must prove that:

"1. *The defendant intended to kill* Chadwick Cochran;

"2. The defendant also intended to inflict extreme physical pain and suffering on Chadwick Cochran while that person was still alive;

"3. The defendant intended to inflict such pain and suffering on Chadwick Cochran for the calculated purpose of revenge, extortion, persuasion, or any other sadistic reason; AND

6

"4. The defendant did an act involving the infliction of extreme physical pain and suffering on Chadwick Cochran." (Emphasis added.)

In accord with these instructions, the prosecutor argued to the jury:

"Now, the special circumstance of torture. Now, remember, this is different from the theory of first-degree murder of torture. It has slightly different elements. [¶] So the first torture that we talked about is one way to get to first-degree murder. [¶] Now, once you've gotten to first-degree murder, either way you get there, whether it's through torture, murder by torture, or that it's intent to kill, being express malice, and it's willful, deliberate and premeditated, once you have got to first-degree murder through one of those theories you must find -- make a finding with regard to the special circumstances that is alleged and the special circumstance is that the murder was intentional and involved the infliction of torture. [¶] *So in this instruction for purposes of the special circumstance you must find that the defendant intended to kill Mr. Cochran.*" (Emphasis added.)

We disagree with Rodriguez's proposition that an instructional error is present in a first degree murder case when it is prosecuted on aiding and abetting, conspiracy, and murder by torture theories, and only CALCRIM No. 733 is given as to a torture special circumstance allegation. While it is true that a jury may find first degree murder under a murder by torture theory without finding an intent to kill, the jury cannot thereafter find a special circumstance allegation to be true under CALCRIM No. 733 without finding that the "defendant" had an intent to kill. In other words, a jury possibly can find a murder to be a first degree murder without determining whether there was an intent to kill. But, to continue on and find a torture special circumstance allegation to be true, the jury must then make the determination that the defendant intended to kill.

7

Rodriguez points out that CALCRIM No. 702 specifically addresses those situations in which a defendant "is not the actual killer," and imposes an "intent to kill" element for such special circumstance findings. That instruction provides, in pertinent part: "If you decide that (the/a) defendant is guilty of first degree murder but was not the actual killer, then, when you consider the special circumstance[s] of _____ *<insert only special circumstance[s] under Pen. Code, §§ 190.2(a)(2), (3), (4), (5), or (6)>*, you must also decide whether the defendant acted with the intent to kill. [¶] In order to prove (this/these) special circumstance[s] for a defendant who is not the actual killer but who is guilty of first degree murder as (an aider and abettor/ [or] a member of a conspiracy), the People must prove that the defendant acted with the intent to kill."

Rodriguez is correct that a torture special circumstance finding in a first degree murder by torture case requires that a defendant who is liable as an aider or abettor or a co-conspirator must include a finding that the defendant him or herself personally harbored an intent to kill the victim. (*People v. Pearson* (2012) 53 Cal.4th 306, 323.) It does not follow, however, that the jury was improperly instructed in his case.

When a reviewing court considers a defendant's claim that a particular jury instruction was wrong or misleading, the court must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveyed; the test is whether there is a reasonable likelihood that the jurors understood the instruction in the manner that the defendant argues they may have. (*People v. Andrade* (2000) 85 Cal.App.4th 579, 585.) A reviewing court determines whether the particular instruction was misleading in the context of all the instructions as a whole. (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1237.) A reviewing court should not find an instruction was misleading unless there is a reasonable likelihood that the jurors misconstrued or misapplied its words. (*Ibid.*)

The court's instructions were consistent with the Use Note to CALCRIM No. 702, which provides that CALCRIM No. 702 is not required when CALCRIM No. 733 is given. The Use Note states, "[f]or those special circumstances where intent to kill is required for both the actual killer and the accomplice, this instruction is not required.

8

For those special circumstances, the instruction on the special circumstances states 'the defendant intended to kill' as an element." CALCRIM No. 733 expressly told the jurors that the People had to prove that "[t]he defendant intended to kill Chadwick Cochran." Rodriguez was the only "defendant" on trial. The instruction plainly told the jurors that they had to find that Rodriguez intended to kill Cochran before they could return a true finding as to the special circumstance allegation. The earlier instructions dealing with theories of guilt for the substantive offense of murder (e.g., CALCRIM Nos. 520 & 521), namely, aiding and abetting and conspiracy were plainly focused on the substantive offense of murder.

Rodriguez asserts the trial court's aiding and abetting instructions, and conspiracy instructions, suggested to the jury that the word "defendant" meant, or included within its meaning, the same thing as "perpetrator." And, thus, when the jurors considered the word "defendant" as used in CALCRIM No. 733, they could have been thinking "perpetrator." This means, argues Rodriguez, that the jurors may have found the torture special circumstance allegation to be true based on a finding that *Perez* was the perpetrator and harbored the intent to kill, without actually finding that Rodriguez also harbored the intent to kill. We note Rodriguez did not request a modification to CALCRIM No. 733, and has forfeited the claim. (*People v. Lee* (2011) 51 Cal.4th 620, 638.) Even so, we are overwhelmingly satisfied that no reasonable juror would have thought that, in *every* instruction given at trial, and in particular in CALCRIM No. 733, the word "defendant" may have meant "perpetrator."

To the extent that Rodriguez argues an error of constitutional magnitude, we are also not persuaded. Not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is whether the instruction resulted in a due process violation, which entails a determination whether there is a likelihood the jury applied the challenged instruction in a way that violated a defendant's constitutional due process rights, e.g., by removing the requirement of proof beyond a reasonable doubt of the elements needed for a particular finding. (See, e.g., *Middleton v. McNeil* (2004) 541 U.S. 433, 437.) We simply do not see that CALCRIM

9

No. 733 removed from the jurors the issue of whether Rodriguez intended to kill the victim. Instead, CALCRIM No. 733 directly informed the jury it had to find he intended to kill before the special circumstance could be found true.

## II. The Victim Restitution Error Claim

Rodriguez contends the trial court erred in imposing victim restitution on the charges which the jury did not return verdicts. We disagree.

The jury at Rodriguez's trial did not return verdicts on three counts. Specifically, the jury did not return a verdict on count 8 — alleging an attempted carjacking of Manuel Canela, or on count 9 —— alleging a robbery of Manuel Canela, or on a count 10 —— alleging a robbery of Elbia Canela. As to those counts, the Canelas testified that they were parked in their car near Brand and Pico in the City of San Fernando, with engine problems, on July 31, 2004, when a man rode up on a bicycle. The man pulled out a gun and told Manuel Canela that he (the man) wanted a ride. The man got into the back seat of the Canelas car, but Manuel could not get the car to start. The man cursed, and demanded their money. After taking the Canelas' money, IDs, and cell phones, the man got back on the bicycle and fled. At trial, Manuel and Elbia both identified Rodriguez in court; the reason for the jury's inability to reach a verdict on counts 8, 9, and 10 is not readily apparent from the record.

When the trial court sentenced Rodriguez on the counts for which verdicts had been returned by the jury, a resolution of counts 8, 9, and 10 was reached by agreement between the court, the prosecutor, and Rodriguez's defense counsel. Under the terms of the agreement, counts 8, 9, and 10 were dismissed and Rodriguez agreed that the court could order restitution to the victims who were involved in the counts. In accord with the agreement between the court and the parties and their lawyers, the court took a waiver from Rodriguez, ostensibly pursuant to *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*). Under *Harvey*, a sentencing court retains authority, subject to a defendant's consent or waiver, to consider the facts of dismissed counts in ordering victim restitution. (See *People v. Ozkan* (2004) 124 Cal.App.4th 1072, 1078.)

10

The trial court set a hearing for September 13, 2013 to determine the amount of victim restitution. The record on appeal does not include a reporter's transcript or minute order from the hearing on September 13, 2013. Thus, we do not know whether the trial court ordered Rodriguez to pay restitution to the Canelas.

On appeal, Rodriguez argues he cannot be held to his agreement to pay restitution. He argues a *Harvey* waiver was not applicable because he did not plead guilty to any offense at the time he agreed to pay restitution to the victims involved in counts 8, 9, and 10. He argues that, without an underlying conviction by plea agreement to at least one of the three counts at issue, the court could not order any victim restitution on the dismissed counts.

We agree with Rodriguez that his situation did not exactly fit the ordinary *Harvey* waiver situation; he was not pleading guilty to one or more counts. We are left to ponder whether Rodriguez would like us to reinstate the counts and require that he plead to one of them and then allow the court to impose victim restitution. But we need not do so. Rodriguez's arguments do not persuade us that he should be allowed to avoid the bargain to which he agreed at the time the trial court dismissed counts 8, 9, and 10, regardless of whether it fit distinctly within the parameters of a *Harvey* waiver. Rodriguez received a benefit from the negotiated settlement—three charges against him were dismissed. The prosecution should likewise receive their bargained for benefit of restitution for the Canelas. Further, in accord with the invited error doctrine, we find that Rodriguez should not be allowed to gain a reversal of an order on appeal when the order was entered upon an agreement that he (by his trial counsel) negotiated with the prosecutor, and which he requested the trial court implement.

We do not have to address whether it would be appropriate for a defendant who was charged with three counts in the first instance to agree to a bargain under which all three counts would be dismissed in exchange for an order directing payment of victim restitution to a victim or victims involved in the counts. Where no conviction was entered in a criminal case, it may or may not be proper to award victim restitution under the Penal Code. But here Rodriguez was first convicted of multiple counts.

11

## DISPOSITION

The judgment is affirmed.


                                        BIGELOW, P.J.

We concur:


        RUBIN, J.


        GRIMES, J.